IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | CRIMINAL NO.  22-324 |
| | : | |
| KONATA MATTHEWS | : | |

McHUGH, J.                                                                                                            October 4, 2024

## MEMORANDUM

Konata Matthews is serving a 100-month sentence for bank robbery that was imposed after the court accepted a recommendation negotiated by the parties pursuant to Federal Rule of Criminal Procedure11(c)(1)(c). Mr. Matthews exercised his right to represent himself, having done so previously on state charges with satisfactory results.  He now brings a series of motions pursuant to 28 U.S.C. §2255, having attempted unsuccessfully to forestall sentencing through a writ of *mandamus*.

Judicial economy would be ill served by any lengthy recitation of facts. The history of this case was summarized in detail during defendant's sentencing hearing. ECF 84.  The relevant portions of the transcript are attached hereto as Exhibit A. Suffice it to say that Mr.  Matthews negotiated a sentence that by any objective measure was entirely fair, and if anything, generous, given the criminal conduct in which he engaged.  After pleading guilty, he then pursued a course of obstruction apparently in the hope of negotiating more favorable terms.

Collectively, these motions encompass two themes: purported irregularities at sentencing and a plea for compassionate release. As to sentencing, Mr. Matthews appears to claim error because his offer of proof was refused, he had no counsel, and he was absent from the courtroom.  His offer of proof was denied because the Court had previously heard testimony as to the evidence of his guilt,

and the proof he described consisted of fanciful conspiracy theories seemingly rooted in the fictions of the Sovereign Citizen movement. He had no counsel at that stage because he had repeatedly asserted his right to represent himself, and when counsel was later appointed to review the record, and specifically review the fairness of the terms of the negotiated sentence, Mr. Matthews refused to cooperate.  Finally, he was removed from the courtroom pursuant to Federal Rule of Criminal Procedure 43(c)(1)(c) because of disruptive conduct over a series of proceedings, after fair warning. In that regard, Mr. Matthews was able to hear the remainder of the proceeding from the cell immediately adjacent to the courtroom, which is wired for sound.  (See Exhibit A.)

As to compassionate release, sentencing irregularities, even if they existed, are ordinarily not properly the subject of a § 2255 motion.  *United States v. Von Vader,* 58 F. 4th 369 (7th Cir. 2023). In any event, Mr. Matthews has separately moved for compassionate release, and his arguments will be addressed in the resolution of that motion. [1]

These motions are frivolous, and there is no basis for granting a certificate of appealability.

 /s/ Gerald Austin McHugh
United States District Judge

---

[1] Defendant's Motion for Reconsideration, ECF 88, will also be denied, as duplicative of the issues discussed here.

# EXHIBIT A

1      MR. MATTHEWS: I'm not. No. I'm, not -- you're
2   all are not doing this. You're not doing this. You're
3   not doing this. You're not forcing this on me. I
4   presented fraud, all kinds of stuff to you, before this
5   court. You not -- you're sitting here and I file papers
6   in the third circuit. You don't even have no attorney on
7   here. You aren't asking me if I want another lawyer or
8   nothing. Just coming here try (unintelligible) in here.
9   You aren't trying to force stuff for me. That's not the
10  way. That's racism. Oppression in office that day --
11  violate my rights --
12          (Kanata Matthews escorted out of the Courtroom.)
13          THE COURT: Is he -- is the prisoner secure?
14  Thank you, deputies. For purposes of the record, I -- I'm
15  going to begin by describing the architecture of courtroom
16  9B, here in the Albany courthouse. And that is that the
17  holding cell is immediately adjacent to the Courtroom.
18  Mr. Matthews is literally fifty feet away from where I sit
19  now. There is a speaker from the Courtroom into the cell
20  area. We tested the speaker this morning so that we could
21  be clear that Mr. Matthews could hear the proceedings.
22  I'm now going to put on the record the history of this
23  matter that I think may be relevant and then proceed to
24  the business at hand, which is sentencing. And from the
25  outset of this case, Mr. Matthews insisted on his right to

1   represent himself.  He did that in front of three
2   magistrate judges before this court, and he did it with me
3   because he has that right.  He was allowed to proceed.
4           He represented to the Court that he had
5   previously represented himself in State Court successfully
6   and in fact proceeded to negotiate with Mr. Jayne and came
7   to a recommended sentence in this case.  There at -- at
8   the time that Mr. Matthews appeared to enter his plea, he
9   then expressed some concern or reluctance.  And as a
10  result of that, the Court continued the guilty plea
11  hearing and gave him approximately five weeks to consider
12  the plea agreement what he had negotiated in the
13  recommended sentence.  He then returned, we held a plea
14  hearing.  I engaged in an extensive colloque with Mr.
15  Matthews. He admitted to having committed the crimes.  He
16  admitted to all and understanding of all of the charges
17  against him.  He admitted that he understood the
18  recommended sentence and under also understood he was
19  giving up his right that to proceed to trial.
20          I explained to Mr. Matthews then that we still
21  needed to do a pre-sentence investigation, and we would
22  proceed in accordance with our regular procedures.  Mr.
23  Matthews then appeared a -- requested a continuance of the
24  sentencing on the basis that he had a medical issue.  I
25  investigated that through the Federal Detention Center,

1 determined that he did not have any issue that would
2 prevent sentencing. And so the sentencing proceeded.
3 When Mr. Matthews appeared, he was belligerent, he was
4 disruptive. One of the reasons I have removed him from
5 the Courtroom today is it was very difficult to establish
6 a clear record and the transcriptionist struggled mightily
7 and did a fine job, but not with stating that there's a
8 lack of clarity that comes when you have a disruptive
9 defendant. And it's for that reason that I have removed
10 him from the Courtroom today.
11 We then rescheduled the sentencing hearing. And
12 early November, Mr. Matthews again appeared, at that time
13 he essentially apologized for his prior behavior and said
14 that he simply needed an attorney to consider things. And
15 if he was given an attorney who would review the plea
16 agreement he expected that we would proceed. I then
17 appointed counsel. For legal purposes, I could easily
18 have ruled that Mr. Matthews had forfeited his right to
19 counsel by his previous insistence and disruptive behavior
20 I did not do so. Instead, I accorded him a greater
21 measure of due process and appointed an attorney.
22 I'll note that I -- I took pains to appoint a
23 particularly well regarded attorney. All of the attorneys
24 in our Criminal Justice Act list are credentialed,
25 qualified, they're screened before we allow them to take

1   cases. The attorney I appointed, Mr. Turner, had
2   particularly impressed me in prior matters.  His academic
3   credentials are sterling, a graduate of Havard, for
4   college and University of Pennsylvania Law School.  He
5   spent seven years as a public defender, and when he came
6   to Philadelphia, he played a role in the criminal law
7   representation, one of the major international firms,
8   Ballard Spahr.  He then formed his own practice, having
9   been impressed with his performance in numerous matters, I
10  appointed Mr. Turner because of my high confidence in him.
11          I'll note as well that he's a public minded
12  attorney, having served as chairperson of the Philadelphia
13  Chapter of the Pennsylvania Association of Criminal
14  Defense Lawyers.  He also has a keen awareness of the
15  rights of defendants having served as chair, the Board of
16  Directors of the Youth Sentencing and Reentry Project, and
17  he volunteers to assist this court's reentry program.  I
18  know that Mr. Turner met with Mr. Matthews, both from the
19  Federal Detention Center and from Mr. Matthews submissions
20  to the Court.
21          Thereafter, however Mr. Turner advised that he
22  attempted twice to visit with Mr. Matthews, who refused
23  the visits.  And then I received the filing from Mr.
24  Matthews seeking the removal of Mr. Turner and once again
25  citing to debunk the theories of the sovereign citizen

1  movement.  And so on that basis I -- I have granted the
2  Defendant's motion to remove Mr. Turner, but I do not
3  intend to appoint another counsel at this point.
4        Let me now talk about some broader issues
5  relevant to the case.  And the first is, do I have any
6  concern about Mr. Matthews' competence?  And the answer to
7  that is no.  He's immature and antisocial, but he knows
8  what he's doing.  He's a very bright man, and he's
9  deliberately manipulating this process.  I've spoken with
10 the Federal Detention Center to ask if they observed any
11 problems with his competence, they replied, no.  He simply
12 has an anger management problem.
13       Second, he had previously moved to withdraw his
14 plea of guilty.  There was no legal basis for withdrawal
15 of the plea.  I had no concern whatsoever -- over about
16 innocence for my familiarity with the case.  But
17 nonetheless, we had an evidentiary hearing, which Special
18 Agent Finnegan reviewed in detail.  The evidence against
19 this accused.  And I'm highly confident that Mr. Turner,
20 as an officer of the Court, would on his own, come to the
21 Court if he thought there was any miscarriage of justice
22 in this case.  Mr. Jayne, was Mr. Turner ever in touch
23 with you in connection with his representation?
24       MR. JAYNE:  Yes, Your Honor.  Several times on
25 the phone and also by email.

 1            THE COURT:  All right.  And did Mr. Turner ask
 2    you to supply information about the case?
 3            MR. JAYNE:  Yes, Your Honor.
 4            THE COURT:  And -- and -- and did you do so,
 5    sorry?
 6            MR. JAYNE:  Yes.  Just for the record, I have a
 7    -- a letter of November 15th, 2023 to Mr. Turner where
 8    it's a very short letter, if I could read it. It is
 9    referring to Mr. Matthews case, criminal number twenty-two
10    dash three two four.  Dear Mr. Turner, thank you for
11    discussing Defendant Konata Matthews case earlier today,
12    as discussed via U.F.S.F. F.X. Dropbox, which is a Dropbox
13    that the D.O.J. uses, please find enclosed a reproduction
14    of the discovery -- excuse me, provided to Defendant
15    Konata Matthews on November 8th, 2022, while he was acting
16    pro se.  In addition, I have also included other documents
17    relevant to Mr. Matthews guilty plea and sentencing.  I'm
18    not including everything in the record.  If you feel
19    there's a need for more information, please contact me.
20            And I followed up with Mr. Turner after that,
21    and he said he had received the materials, and he's also
22    indicated to me that he reviewed the materials.  And
23    obviously he didn't tell me about this discussion with Mr.
24    Matthews, but he relayed that Mr. Matthews requested that
25    he not be here today, notwithstanding the fact that it was

1    his choice to come one way or the other, but he didn't
2    want to aggravate Mr. Matthews or disrupt the proceedings.
3    So he didn't -- he didn't come to court today.
4             THE COURT:  All right.  Thank you, Mr. Jayne.
5    And -- and -- and so in -- in short, I find that Mr.
6    Matthews is competent.  He voluntarily and knowingly
7    entered a plea of guilty to offenses of which he's in
8    fact, guilty. He has been offered and declined, offered
9    and accepted, and was given very competent legal
10   representation, which he's now foolishly discarded.  And
11   his request now for counsel is nothing more than an
12   attempt to delay the proceedings.  And I say that having
13   reviewed the allegations in his motion, which are flatly
14   contradicted by the record in this case.  So that would
15   now bring us to the point where we can consider the
16   recommended sentence.  I'll note the presence of Officer
17   Mayer from probation.  Thank you for your assistance
18            OFFICER MAYER:  Morning, Your Honor.
19            THE COURT:  Filling in for Officer Danson.  One
20   technical matter before we begin, and that is under the
21   2023 revisions to the guidelines.
22            And there will be actually one lower status
23   point according to -- to Mr. Matthews.  This would be at
24   paragraphs one sixteen and one seventeen of the pre-
25   sentence investigation report.  However, that does not